UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:17-CV-032-TBR

MEENU ARYA, ET AL.                                                      PLAINTIFF

v.

AJAY TAXAK, ET AL.                                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on two pending motions.[1] First, Defendants AU Infotech, LLC, AU Wholesale, LLC, and Ajayupu, LLC ("the Ajay Defendants") filed a Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6), [R. 15.], which incorporated the arguments from Ajay Taxak's Motion to Dismiss, [R. 11]. Second, Defendants Sanjay Taxak, Dakshin South Indian Restaurant, Fateh Imports, Inc., Indra International, Subzi Mandi, Midwest Logistics, LLC, Samayra, Inc., Sanprit Resources, Inc., Swades, LLC, Taxak University, Taxak's Gasoline, LLC, Yoway, LLC, and Zayka Foods, LLC ("the Sanjay Defendants") filed a Partial Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6). [R. 16.] Fully briefed, this matter is now ripe for adjudication. For the reasons stated herein, the Ajay LLC Defendants' Motion to Dismiss for Failure to State a Claim, [R. 15.], is **DENIED**, and the Sanjay Defendants' Partial Motion to Dismiss for Failure to State a Claim, [R. 16.], is **DENIED**.

## BACKGROUND

This case involves the story of three Indian immigrants and their journey to start a new life in America. The Plaintiffs allege that what looked like an encouraging opportunity at first,

---

[1]As previous arguments were incorporated into the most recent motions to dismiss, the Court has considered all arguments from the previous motions in its ruling.

revealed itself to be a trap involving unpaid labor and broken promises. The defendants deny
these allegations.

### A. Plaintiff Hooda Moves to the United States

The factual allegations as set out in the Amended Complaint, [R. 12 (Amended
Complaint)], and taken as true are as follows. *See Total Benefits Planning Agency, Inc. v.
Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v.
Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)).  In December of 2009, Sanjay Hooda
("Hooda") fled to the United States due to a rising tide of violence surrounding political conflict
in his home of Haryana, India. [R. 12 at 6.] He briefly settled in Philadelphia, Pennsylvania,
where he was put into contact with Ajay Taxak ("Ajay"), another former citizen of Haryana. [*Id.*]
Plaintiffs state that in November of 2010, Ajay told Hooda over the phone that he could
accommodate Hooda with a good job, room and board, and legal assistance with his immigration
status if Hooda moved to Louisville, Kentucky, where Ajay resided. [*Id.*] Plaintiffs allege that
shortly after that phone conversation, Ajay promised that if Hooda loaned him $1,500, Ajay
could arrange the job, housing, and legal assistance discussed earlier, and he would repay Hooda
once he arrived in Louisville. [*Id.*] Thereafter, Hooda wired the money to Ajay, and, in January
2011, Hooda moved to Louisville. [*Id.*]

After arriving in Louisville, Hooda met Ajay's brother, Sanjay Taxak, and accepted a job
at one of the Taxak family' businesses, the Subzi Mandi grocery store. [*Id.* at 7.] Plaintiffs assert
that the job was to pay a rate of approximately $1,600 per month, along with room and board and
legal immigration assistance. [*Id.*] Plaintiffs claim that after he accepted the job, Ajay collected
Hooda's identification-related documentation and the rest of his money, $1,400, explaining that
he would keep them safe. [*Id.*]

### B.  Hooda's Housing

Plaintiffs describe Hooda's initial housing as an unfurnished back-room of the restaurant, which he shared with eleven other workers. [*Id*. at 8.] Around 2013, Plaintiffs allege that the Taxak brothers moved Hooda and the other workers to a small house across the street from the grocery where he shared a room with an abusive roommate. [*Id.*] Furthermore, they state that eight to eleven people lived in the house at various times. [*Id*.]

### C.  Hooda's Work Schedule and Conditions

Plaintiffs state that from January 2011 until about June 2011 Hooda worked approximately 98 hours per week; from July 2011 to October 2013 he worked approximately 85 hours per week; and from November 2013 until June 2014 he worked approximately 80 hours per week. [*Id*. at 10.] Plaintiffs allege that all three of these periods involved long hours with only one fifteen minute break per day. [*Id*. at 9-11.] Furthermore, Hooda was supposed to have Mondays off, but he was often forced to work at one of the other Taxak family ventures, including the family farm. [*Id*.] Plaintiffs state that Hooda suffers from back pain, but he was consistently denied further breaks by the Taxak brothers. [*Id*. at 11.] Also, Plaintiffs maintain that the Taxaks kept the store at unbearably cold temperatures, and Sanjay threatened to punish and beat Hooda if he used the heater. [*Id*.] Allegedly, this caused Hooda to become ill, which the Taxak brothers refused to accept as an excuse for him not to work. [*Id*.] Plaintiffs assert that Sanjay intimidated and threatened Hooda frequently, and Hooda witnessed him follow through on these threats with co-workers. [*Id*. at 14.] Plaintiffs allege that Sanjay prevented Hooda from taking another job in 2013 at a gas station by threatening the owner. [*Id*. at 12-13.]

### D.  Hooda's Compensation

Overall, Plaintiffs assert that the wages paid to Hooda were significantly below the amount required by federal and Kentucky minimum wage laws. [*Id*. at 12.]  Plaintiffs claim that Hooda was not paid until June of 2011. [*Id*. at 11.] Allegedly he was paid $1,600 per month for June and July of 2011, but he did not receive payment for the month of August. [*Id*.] From August onward, Plaintiffs state that Hooda's wages steadily increased to where he was paid $2,500 per month from March 2014 through June 2014. [*Id*. at 11-12.] Plaintiffs allege that the Defendants never provided Hooda with back pay for missing wages, never gave Hooda pay records, failed to post notices describing state and federal wage laws in the grocery or the restaurant, and refused to pay Hooda back the $2,900 initially taken from him. [*Id*. at 12.] Furthermore, Plaintiffs maintain that, despite Hooda's inquiries, Sanjay only took Hooda to see a lawyer once and to one or more court dates, but the lawyer eventually stopped representing Hooda due to Sanjay not paying him or bringing Hooda to their meetings. [Id. at 13.] Allegedly, Ajay told Hooda he would be arrested for his immigration status if he tried to report the defendants to law enforcement authorities. [*Id*. at 12.]

### E.  Plaintiffs Meenu and Narender Arya Move to the United States

What started as a temporary visit to the United States for Meenu and Narender Arya in April of 2013, allegedly ended as a permanent re-location to Louisville when Sanjay offered the couple employment at his restaurant, Dakshin. [*Id*. at 14]. Plaintiffs state that Sanjay promised them a wage of $600 per week, lodging, food, and immigration legal assistance. [*Id*. at 14-15.] The Aryas accepted his offer. [*Id*.]

### F.  The Aryas Housing

Plaintiffs state that the Aryas moved into the same small, unfurnished house as Hooda. [*Id*.] Plaintiffs allege that it was an unsafe and hostile environment, especially once Meenu

4

became pregnant in February of 2014. [*Id.* at 15.] It was around this same time that the Plaintiffs recall Sanjay collected their passports so the attorney he was to hire for them could process their immigration paperwork. [*Id.*] Plaintiffs claim that Sanjay never hired legal assistance to represent the Aryas as he promised. [*Id* at 19.]

Eventually, around March or April of 2014, the Plaintiffs allege that the unhealthy living conditions in the house caused the Aryas to feel like they could no longer live there. [*Id*. at 19.] When they confronted Sanjay about it, he allegedly refused to help them re-locate and threatened to physically harm Narender if he complained again. [*Id*.]

### G.  The Aryas' Work Schedule and Conditions

Similar to Hooda, the Plaintiffs describe the Aryas' weekly schedule as a six day work week consisting of long hours and few breaks. [*Id.* at 16.] The Plaintiffs state that the typical work day consisted of a first shift from 10:00 A.M. to 2:30 P.M., followed by a second shift that would last from 4:45 P.M. to between 10:00 and 11:00 P.M., but sometimes 12:30 or 1:00 A.M. if they had to cook for the other workers. [*Id*.] Plaintiffs allege that they were not permitted to take time off work, even in circumstances where they needed to see a doctor due to illness. [*Id*. at 17.] They claim that Sanjay told them to keep working or they would never get immigration assistance. [*Id*.] Plaintiffs also allege that Sanjay regularly observed the workers at the restaurant, and he was verbally abusive toward the Aryas on these occasions. [*Id*.]

### H.  The Aryas' Compensation

The Plaintiffs allege that the wages the Aryas received fall significantly below what is required under federal and Kentucky minimum wage laws. [*Id*. at 20.] Furthermore, they claim that the Aryas did not receive compensation for their first month of work in December 2013. [*Id*. at 17.] When they asked for payment, the Plaintiffs allege that Sanjay lied to the Aryas, saying

5

that this was a "trial period," and their wages were going toward housing, food, taxes, and immigration lawyers (which were never hired). [*Id*. at 18.] Allegedly, from January 2013 to April 2014, Sanjay paid Meenu approximately $1,200 per month, which would be less than the law requires, as well as what was promised. [*Id*.] Plaintiffs state that Narender received twenty to fifty dollars in tips each day, but these were unfairly distributed among employees. [*Id*. at 18-19.]

Allegedly, the Aryas confronted Sanjay several times about his failure to pay what he promised and the uneven distribution of tips. [*Id*. at 19.] They recall that Sanjay replied with the familiar excuse that he was using that money to pay taxes and immigration attorneys. [*Id*.] Plaintiffs claim that by May and June of 2014, Sanjay stopped paying them entirely. [*Id*.]

### I.   Plaintiffs Leave Louisville

On June 26, 2014, Plaintiffs state that Narender once again confronted Sanjay about the payment of wages, legal assistance, and the abusive behavior of Hooda's roommate. [*Id*. at 20.] Allegedly, Sanjay swore at Narender and accused him of asking too many questions. [*Id*.] When Narender told Sanjay not to swear at him, Plaintiffs allege that Sanjay dragged Narender by the collar through the restaurant and hit him in the neck. [*Id*.] The Plaintiffs recall that the next day they tried, unsuccessfully, to contact Sanjay for the return of their passports. [*Id*.] They claim that when the Aryas arrived at the restaurant they were met by Sanjay's nephew, Singh, who physically beat Narender while scolding him for talking to Sanjay disrespectfully and asking so many questions. [*Id*.] Plaintiffs further allege that when the visibly pregnant Meenu yelled at him to stop, Singh shoved her to the floor and tried to kick her in the abdomen but was blocked by Narender. [*Id*. at 21.] Plaintiffs state that Hooda was working that morning and tried to intervene, but backed off when Singh threatened to beat him up too. [*Id*. at 21.]

Plaintiffs allege that Sanjay acknowledged the fact that he had his nephew attack them. [*Id*.] They state that Sanjay then returned the Aryas' passports and threatened that he would break their hands and legs if he saw them again. [*Id*.] Plaintiffs claim that Sanjay also showed Hooda his gun and threatened to shoot him. [*Id*.] Plaintiffs recall that Hooda then called a friend who took the Aryas to the hospital so they could have their injuries treated, which is where they filed a police report. [*Id*.] Allegedly, the Aryas then left for Chicago, but Hooda remained in Louisville in order to retrieve his passport, immigration documentation, and money from Sanjay. [*Id*. at 22.] Plaintiffs allege that Sanjay told Hooda he did not have his documentation and he would break Hooda's legs if he ever saw him again. [*Id*.] Allegedly, Hooda then left Louisville and joined the Aryas in Chicago. [*Id*.]

On April 10, 2017, Plaintiffs filed the Amended Complaint, which contains fourteen causes of action involving minimum wage and overtime compensation violations, a human trafficking violation, promissory estoppel, quantum meruit, unjust enrichment, fraud, intentional interference with a prospective contractual relation, and conversion. [R. 12.] The following month, the Ajay LLC Defendants and the Sanjay Defendants filed a Motion to Dismiss, [R. 15], and a Partial Motion to Dismiss, [R. 16], respectfully.

## STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc.*, 552 F.3d at 434 (citing *Great Lakes Steel*, 716 F.2d at 1105). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

## DISCUSSION

In their Amended Complaint, Plaintiffs assert fourteen causes of action. [R. 12]. The Court will address each in turn, weighing them against the standard articulated above. However, first, the Court will address the introductory arguments surrounding the claims against different entities that involve the defendants.

### I.   Legal Entity Issues

#### A.  "Subzi Mandi" and "Dakshin South Indian Restaurant"

Both defendants argue that neither Subzi Mandi nor Dakshin South Indian Restaurant are legal entities, therefore, they cannot be sued. [*See* R. 11-1 at 1-2 (Ajay Motion to Dismiss); R. 16-1 at 3 (Sanjay Motion for Partial Dismissal).] However, neither defendant provides

documentation to support this accusation.[2] The Court acknowledges the array of case law supplied by the Sanjay Defendants. [R. 16-1 at 3]. However, this precedent cannot be applied without evidence that these businesses are not registered as legal entities. Otherwise, at this stage in the litigation, the Court must presume that the factual allegations in the complaint are true, i.e., that both businesses are legal entities that employed the Plaintiffs. *See Total Benefits Planning Agency, Inc.*, 552 F.3d at 434.

### B. Entity Defendants

The Sanjay Defendants also assert that the Plaintiffs' claims against the entities owned by Sanjay ("Entity Defendants") should be dismissed as improperly pled due to the Plaintiffs' "mere speculation" that they are entitled to recover from one of the defendants. [R. 21 at 2 (Sanjay's Reply).] However, in their Amended Complaint, the Plaintiffs stated the connection of the Entity Defendants to Sanjay, as well as how the Entity Defendants were involved in the first, second, third, fourth, eighth, ninth, tenth, and eleventh causes of action. [*See* R. 12 at 5, 22-28, 30-33.] The Court holds that these statements raise a "'plausible' inference of wrongdoing." *Iqbal*, 556 U.S. at 678.  Therefore, the Plaintiffs have satisfied their pleading burden at this stage of the litigation.

### II.  First Cause of Action: FLSA Violations (Hooda[3] Against All Defendants)[4]

The policy underlying the Fair Labor and Standards Act (FLSA) is that Congress wished to remedy "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a).

---

[2] Ajay cited to a "Kentucky Secretary of State report," [R. 11-1 at 2], but did not attach it to his memorandum nor did he give the Court an alternative avenue by which to locate the document.
[3] Presuming "all of the factual allegations in the complaint are true," the Court will refer to this defendant as Sanjay Hooda ("Hooda"). *Total Benefits Planning Agency, Inc.*, 552 F.3d at 434.
[4] It should be noted that the Plaintiffs clarified that Hooda's claim under the FLSA is in relation to his work at the grocery and the Aryas' claim under the FLSA is in relation to their work at the Dakshin restaurant. [*See* R. 20 at 6.]

Pertinent to this case, the FLSA requires "employers to pay employees engaged in commerce a wage consistent with the minimum wage established by the Act, [29 U.S.C.] § 206(a), and 'provides that employers may not require employees to work more than forty hours per workweek unless those employees receive overtime compensation at a rate of not less than one-and-one half times their regular pay.'" *Ellington v. City of East Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (quoting *Baden–Winterwood v. Life Time Fitness, Inc.,* 566 F.3d 618, 626 (6th Cir. 2009)).

In the first cause of action, the Plaintiffs assert that all of the defendants willfully violated the FLSA by failing to pay Hooda the applicable minimum wage for every compensable hour of labor performed, including overtime wages, and failing to post a notice explaining the FLSA in a conspicuous place where employees could see it. [*See* R. 12 at 23 (citing 29 U.S.C. §§ 206(a) and 207(a) and 29 C.F.R. § 516.4).]

### A. Ajay as "Employer"

The Ajay Defendants argue that the first count, as well as others, must fail because Ajay was not an "employer" of Hooda, as required under the FLSA, 29 U.S.C. § 203. [R. 11-1 at 3.] The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C.A. § 203. To determine whether someone is an "employer" under the FLSA, the Sixth Circuit uses the "economic reality test" in a case-by-case approach. *See Ellington*, 689 F.3d at 555. As quoted by the Plaintiffs, the Sixth Circuit stated that the Court may consider relevant factors involving the "circumstances of the whole business activity," including:

> whether the plaintiff is an integral part of the operations of the putative employer;
> the extent of the plaintiff's economic dependence on the defendant; the
> defendant's 'substantial control of the terms and conditions of the work' of the
> plaintiff; the defendant's authority to hire or fire the plaintiff; and whether the
> defendant maintains the plaintiff's employment records and establishes the rate
> and method of payment.

*Id*. (citations omitted). In the Amended Complaint, the Plaintiffs allege that Ajay offered

Hooda a job, [*See* R.12 at 6-7], that Ajay and Sanjay controlled the terms and conditions

of Hooda's work at the store, [*Id*. at 10-11], and that Ajay and Sanjay each had authority

over Hooda's compensation, [*Id*. at 11-12]. Without further evidence from the

Defendants, the Court must presume the factual allegation in the Amended Complaint,

that Ajay was Hooda's employer, is true.

### B. Statute of Limitations

The Sanjay Defendants argue that the Plaintiffs' claims for unpaid wages and overtime

pay based on events preceding January 18, 2014 must be at least partially time barred under the

three-year statute of limitations of the FLSA. [R. 16-1 at 4.] They reason that due to the fact that

the Plaintiffs filed their Complaint on January 18, 2017, any conduct pre-dating January 18, 2014

is time-barred. [*Id*.] The timeline alleged by the Plaintiffs in their Amended Complaint involves

conduct that falls both before and after the Sanjay Defendants' deadline. [*See* R. 12.]

Both the Sanjay Defendants and the Plaintiffs cite to the Sixth Circuit's holding in

*Michalak v. LVNV Funding* on this subject. In *Michalak*, the defendant filed a motion to dismiss

a class action complaint accusing them of issuing improper dunning letters under the Fair Debt

Collection Practices Act ("FDCPA"). 604 F. App'x 492, 493 (6th Cir. 2015). There, the Sixth

Circuit stated that although a Rule 12(b)(6) motion is generally an "'inappropriate vehicle' for

dismissing a claim based upon a statute of limitations . . . Dismissal can be appropriate, though,

if the 'allegations in the complaint *affirmatively show* that the claim is time-barred.'" *Id*. (first

citing *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013); then quoting

*Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). The Sixth Circuit held that

although some of the dunning letters fell outside the statute of limitations, the court could infer

that the plaintiff received at least one dunning letter within the correct time period. *Id*. at 494.

The court stated that the defendant did not establish its affirmative defense as to all of the

letters.[5] *Id*. Therefore, the Sixth Circuit reversed the lower court's decision to grant the motion to

dismiss. *Id*.

Here, the Plaintiffs state in the Amended Complaint that Hooda worked for low to non-

existent wages from January 2011 to June 2014, [R. 12 at 10-12], and the Aryas did the same

from December 2013 to June 2014, [*Id*. at 17-19]. Clearly, portions of both of these time periods

fall outside the statute of limitations put forth by the defendants. However, as in *Michalak*, this

statute would only bar recovery for a portion of the dates specified under the claim, not the entire

claim itself. *See* 604 F. App'x at 494. In other words, the Plaintiffs did not affirmatively plead

themselves out of court because the claim is not fully barred by the statute of limitations. The

Court will save arguments and presentation of evidence over appropriate damages regarding the

applicable dates for another day. For now, the claim survives dismissal.

III.    **Second Cause of Action: FLSA Violations (The Aryas Against Sanjay Taxak, the**

       **Dakshin, the Corporation Defendants, and the Sanjay Taxak LLC Defendants)**

In the second cause of action, the Plaintiffs assert that the specified defendants willfully

violated the FLSA by failing to pay the Aryas the applicable minimum wage for every

compensable hour of labor performed, including overtime wages, and failing to post a notice

---

[5] It should be noted that, under the FDCPA, "each dunning letter may constitute a separate violation of the FDCPA." *Michalak*, 604 F. App'x at 493.

explaining the FLSA in a conspicuous place where employees could see it. [*See* R. 12 at 23 (citing 29 U.S.C. §§ 206(a) and 207(a) and 29 C.F.R. § 516.4).]

The same analysis concerning the statute of limitations described previously in relation to Hooda applies to the Aryas. Therefore, the Aryas claim under the second cause of action survives dismissal.

## IV.   Third Cause of Action: Kentucky Minimum Wage and Overtime Compensation Violations (Hooda Against All Defendants)

Similar to the FLSA, the Kentucky Wage and Hours Act ("KWHA") ensures that employers pay their workers the wages and overtime pay they deserve. The Plaintiffs allege violations of several different sections of the KWHA, including failure to pay all wages due to Hooda, failure to pay overtime, illegal deduction of wages, failure to furnish Hooda with a statement of wage deductions, failure to pay minimum wages, failure to give a rest period of at least ten minutes during each four hours worked, and failure to post an explanation of employee rights. [*See* R. 12 at 25-28 (citing K.R.S. §§ 337.020, 337.055, 337.050, 337.060, 337.060, 337.070, 337.275, 337.365, and 337.325).] KWHA claims are governed by a five-year statute of limitations. K.R.S. § 413.120(2).

### A.  Statute of Limitations

Similar to the claim under the FLSA, the defendants argue that Hooda cannot recover damages for any alleged unpaid wages for the period of June 2011 through January 17, 2012 due to the five-year statute of limitations. [*See* R. 16-1 at 6.] As with the FLSA statute of limitations argument, the Court finds that, at least at this stage in the proceedings when the Court must accept the factual allegations of the complaint as true, the Plaintiffs' claim is not completely barred by the statute of limitations under the KWHA. Therefore, the claim survives dismissal.

### B.  K.R.S. § 337.325

Section 337.325 of the Kentucky Revised Statutes requires employers to post "summaries of wage and hour laws and regulations issued under K.R.S. 337.295" in a conspicuous and accessible place where employees can see it. K.R.S. § 337.325. The Sanjay Defendants originally argued that the claim concerning rest breaks under K.R.S. § 337.65, as well as the claim concerning failure to post a notice under K.R.S. § 337.325, fell "outside of the express listing of those sections for which employees may recover under the Wage and Hour Act." [R. 16-1 at 5-6.] The Plaintiffs responded by arguing that they did "have standing to pursue recovery of damages from Defendants' violation of the rest period and notice requirements in K.R.S. §§ 337.365 and 337.325." [R. 20 at 9.] In their Reply, the Sanjay Defendants concede that "actions may be brought based on Plaintiffs' rights to not miss rest or meal breaks" based on *England v. Advance Stores Co.*, which served as the cornerstone of the Plaintiffs' argument in their Response. [R. 21 at 3 (citing *England v. Advance Stores Co.*, 263 F.R.D. 423, 441 (W.D. Ky. 2009)).] Notably, the Sanjay Defendants did not specifically respond to the Plaintiffs' argument regarding the notice requirements. At this stage in the proceedings, the Court must draw all reasonable inferences in favor of the Plaintiffs. With no further argument from the defense, the Court will allow the claim to survive dismissal.

### C.  K.R.S. § 337.060

Section 337.060 of the Kentucky Revised Statutes provides that "[n]o employer shall withhold from any employee any part of the wage agreed upon." K.R.S. § 337.060. The Sanjay Defendants argue that this statute does not apply to Hooda because it governs employees who receive gratuities, and Hooda never received gratuities as an employee of the grocery store. [R. 16-1 at 6.] The Plaintiffs disagree, stating that the statute is not limited to governing gratuities.

[R. 20 at 9.] Judging from the plain language of the statute, the Court agrees with the Plaintiffs. Furthermore, the Western District of Kentucky has previously allowed claims under K.R.S. § 337.060 in cases involving professions that did not receive gratuities. *See, .e.g., Keys v. Monument Chemical Kentucky, LLC*, No. 3:15-CV-645-DJH, 2017 WL 2196751, at *6 (W.D. Ky. 2017) (involving wages for four unused sick days by a plaintiff that worked as a production shift supervisor at a chemical plant); *Coleman v. FedEx Ground Package System, Inc.*, No. 3:05-CV-522-H, 2012 WL 2407538, at *2-3 (W.D. Ky. 2012) (involving claims concerning wage deduction from plaintiffs that worked at FedEx Ground). Therefore, the Court denies the Sanjay Defendants' argument for dismissal of this claim.

### D.  Ajay as "Employer"

Similar to the FLSA claims, the Ajay Defendants argue that this claim must fail because Ajay was not an "employer" of Hooda as defined under K.R.S. § 337.010(1)(d). [R. 11-1 at 3.] That section defines an "employer" as "any person, either individual, corporation, partnership, agency, or firm who employs an employee and includes any person, either individual, corporation, partnership, agency, or firm acting directly or indirectly in the interest of an employer in relation to an employee." K.R.S. § 337.010(1)(d). As previously discussed, the Plaintiffs alleged in their Amended Complaint that Ajay offered Hooda a job, [*See* R.12 at 6-7], that Ajay and Sanjay controlled the terms and conditions of Hooda's work at the store, [*Id*. at 10-11], and that Ajay and Sanjay each had authority over Hooda's compensation, [*Id*. at 11-12]. Because the language of "acting directly or indirectly in the interest of an employer in relation to an employee" in this Kentucky statute is identical to that of the FLSA, the Court will make the same determination. At this stage in the proceedings, the Court must accept the factual allegations in the complaint as true, including the allegation that Ajay was Hooda's employer.

V.    **Fourth Cause of Action: Kentucky Minimum Wage and Overtime**
      **Compensation Violations (The Aryas Against Sanjay Taxak, the Dakshin, the**
      **Corporation Defendants, and the Sanjay Taxak LLC Defendants)**

The Court holds that the Aryas claim under the KWHA in the fourth cause of action survives dismissal for the same reasons articulated above.

VI.   **Fifth Cause of Action: Kentucky Human Trafficking Violation (All Plaintiffs**
      **Against Sanjay Taxak and Ajay Taxak)**

Human trafficking is defined under K.R.S. § 529.010(5)(a) as "criminal activity whereby one (1) or more persons are subjected to engaging in: (a) forced labor services." K.R.S. § 529.010(5)(2). Besides alleging that Sanjay and Ajay were engaged in human trafficking, Plaintiffs also argue that they are entitled to punitive damages under K.R.S. § 337.385(3), which states:

> If the court finds that the employer has subjected the employee to forced labor or services as defined in KRS 529.010, the court shall award the employee punitive damages not less than three (3) times the full amount of the wages and overtime compensation due, less any amount actually paid to such employee by the employer, and for costs and such reasonable attorney's fees as may be allowed by the court, including interest thereon.

K.R.S. § 337.385(3).

A.  **Ajay as "Employer"**

In moving to dismiss the claim, the Ajay Defendants revive their argument from the first cause of action that the allegation of human trafficking must fail because Ajay was not an employer of Hooda.[6] [R. 11-1 at 3.] Even if human trafficking laws require the same type of employment relationship as required by federal and state minimum

---

[6] Contrary to Ajay's characterization, [*See* R. 11-1 at 3], the Plaintiffs imply in their Response that Counts 1, 3, 5, 8, and 10 concern the employer-employee relationship between the Ajay Defendants and Hooda, not the Ajay Defendants and the Aryas, [*See* R. 19 at 3].

wage laws,[7] the Court stands beside its analysis from the first cause of action and, at least at this stage of the proceedings, presumes the factual allegation in the complaint to be true that Ajay was Hooda's employer.

### B.  Statute of Limitations

The Sanjay Defendants argue that Hooda's claim of human trafficking must be dismissed because it is based on Ajay allegedly taking his identification-related documentation in 2011, which is beyond the five-year statute of limitations. [*See* R. 16-1 at 7.] The Plaintiffs argue that the claim should still survive due to the alleged false representations, forced labor, and threats of physical violence additionally stated to support this cause of action in the Amended Complaint. [*See* R. 20 at 10; *see also* R. 12 at 28-29.] Notably, these allegations in the Amended Complaint were not accompanied by dates that could cause them to be barred by the statute of limitations. The Court agrees with the Plaintiffs. Even if the confiscation of the documents is barred, the Plaintiffs still sufficiently plead a violation of the statute by alleging these other details.

### VII.  Sixth Cause of action: Promissory Estoppel (Hooda Against Sanjay Taxak and Ajay Taxak)

Under the sixth cause of action, the Plaintiffs allege that the Taxak brothers promised but ultimately "failed to pay Hooda the full amount that was promised, failed to provide safe and habitable housing, and failed to procure the promised legal services." [R. 12 at 29.] Both sets of defendants argue that this claim is untimely and should be barred by the five-year statute of limitations.

---

[7] The Court acknowledges the Plaintiffs' argument that the Ajay Defendants failed to cite case law supporting the notion that Kentucky human trafficking laws entail the same type of employment relationship required by federal and state minimum wage laws. [*See* R. 19 at 3.] However, it is not necessary for the Court to address this issue at this time because, even if it does require such a relationship, the Court has already stated that, in accordance with Rule 12(b)(6), it must accept that Ajay was Hooda's employer at this time.

The Sanjay Defendants argue that the brothers' promises to Hooda, on which he relied in taking the job, occurred in 2011. [R. 16-1 at 7-8.] Therefore, they claim the promissory estoppel claim is barred under the five-year statute of limitations. [*Id.*] The Plaintiffs respond that a promissory estoppel claim does not begin to accrue until there is a breach of the promise. [R. 20 at 11 (citing Ronald Eades, KENTUCKY LAW OF DAMAGES § 12:14 (March 2017)).] The Court agrees with the Plaintiffs. The Sixth Circuit has stated: "Usually an action accrues at the time of infliction of a wrong or breach of a contract." *Willits v. Peabody Coal Co.*, 188 F.3d 510, at *12 (6th Cir. 1999) (quoting *Hoskins' Adm'r v. Kentucky Ridge Coal Co.*, 305 S.W.2d 308, 311 (Ky. 1957)). At this point in the litigation, the Court must presume the Plaintiffs' claim that the alleged breach of promise to Hooda occurred in 2014 to be true. Thus, the claim is not barred by the statute of limitations at this time. [*See* R. 12 at 22.]

The Ajay Defendants also argue that the claim should be barred by the five-year statute of limitations but under different reasoning. [R. 11-1 at 4-5.] Unlike the Sanjay Defendants, the Ajay Defendants acknowledge that an action for promissory estoppel accrues at the time of the breach of the promise. [R. 11-1 at 4.] However, the Ajay Defendants argue that the breach of promise occurred in January 2011 when the defendants allegedly did not pay the promised $1600 monthly wages, not in 2014. [*Id.* (citing R. 1 at 23, ¶ 179).] However, the portion of the Complaint cited by the Ajay Defendants does not mention the breach of a promise, it merely states:

> Also as set forth above, the Taxak brothers made a clear and unambiguous promise to Plaintiff Hooda that he would be paid at least $1,600 per month, with a raise to $1,800 per month in August 2011 and would also receive housing, food and legal assistance with his immigration status in exchange for his labor at the Subzi Mandi grocery store.

18

[R. 1 at 23.] The Amended Complaint alleges that "eventually" Ajay refused to pay Hooda the money owed, [R.12 at 12], and, in June 2014, Sanjay refused to return Hooda's passport, immigration documentation, and money owed, [*Id*. at 22]. At this stage in the litigation, the Court must presume all of the factual allegations in the complaint are true. Therefore, the claim survives dismissal.

## VIII.   Eighth and Tenth Causes of Action[8]: Quantum Meruit and Unjust Enrichment (Hooda Against All Defendants)

### A.  Statute of Limitations

The Sanjay Defendants argue that the Plaintiffs' claims for both quantum meruit and unjust enrichment should be barred by a five-year statute of limitations. [*See* R. 16-1 at 8.] Once again, this is based on the reasoning that Hooda should not be able to recover damages for any work performed from 2011 through January 17, 2012. [*Id*.] Neither party makes arguments as to what specific occurrence would cause the statute of limitations to start accruing for either action. Therefore, as previously stated, the Court finds that these earlier dates do not completely bar the claim, and the Court will save argument over the amount of damages concerning the dates that allegedly fall outside the statute of limitations for another day.[9]

### B.  Ajay as "Employer"

The Court stands by its previous explanation for accepting the factual allegation in the complaint that Ajay was Hooda's employer.[10]

## IX.   Twelfth Cause of Action: Fraud (Hooda Against Ajay Taxak)

---

[8] None of the defendants challenge the seventh cause of action.

[9] As explained by the Plaintiffs, the Aryas did not accept employment at the restaurant until November 2013. [R. 12 at 31.] Therefore, their claims fall after the 2011 to January 2012 window of time the Sanjay Defendants reference in their argument, and counts nine and eleven are not barred by the statute of limitations.

[10] See previous discussion from the first and fifth causes of action for further detail.

The Plaintiffs plead a claim for fraud based on representations made by Ajay that caused Hooda to relinquish a total of $2,900, his passport, and immigration documents to Ajay. [R. 12 at 33-34.] Ajay misread the claim and argued in his original Motion to Dismiss that the claim for fraud is solely based on Ajay's initial phone conversation with Hooda in November 2010. [R. 11-1 at 5.] Ajay did not correct this misconception in his subsequent Motion to Dismiss after the Plaintiffs filed their Amended Complaint. [*See generally* R. 15.] At this stage in the litigation, the Court must accept the allegations by the Plaintiffs in the Amended Complaint to be true, and, therefore, Ajay's arguments concerning failure to state a claim and the statute of limitations for this cause of action are denied.

X.      **Thirteenth Cause of Action: Intentional Interference with Prospective Contractual Relation (Hooda Against Sanjay Taxak)**

The Plaintiffs assert a claim of intentional interference with prospective contractual relation based on the allegation that after Hooda accepted a job with another employer, Sanjay "intentionally called the prospective new employer for the purpose of convincing the employer not to hire Hooda and to prevent Hooda from leaving his work at the Subzi Mandi grocery store and the farm." [R. 12 at 35.] More specifically, the Plaintiffs allege that Sanjay "threatened the [prospective employer] to prevent Hooda from obtaining other employment." [R. 12 at 13.] The Sanjay Defendants argue that the underlying tort of this claim is defamation, and, therefore, it is barred by the one-year statute of limitations. [*See* R. 16-1 at 9; R. 21 at 4 (citing *Ceres Protein, LLC v. Thompson Mechanical & Design*, No. 3:14-CV-00491-TBR-LLK, 2016 WL 6090966, at *6 n.5 (W.D. Ky. 2016).] The Plaintiffs respond that Hooda has not alleged defamation

20

and, therefore, the one-year statute of limitations does not apply. [R. 20 at 13.] The Court

agrees with the Plaintiffs. The Amended Complaint does not allege defamation.[11]

Therefore, the one-year statute of limitations does not apply, and the Court denies the

Sanjay Defendants' argument for dismissal.

XI.     **Fourteenth Cause of Action: Conversion (Hooda Against Sanjay and**

**Ajay Taxak)**

In the final cause of action, the Plaintiffs allege that Sanjay and Ajay committed

conversion when they wrongfully withheld Hooda's passport, bond papers, and immigration

documentation. [*See* R. 12 at 35.] The Sanjay Defendants argue that the two-year statute of

limitations[12] started accruing when Ajay allegedly took Hooda's passport in 2011, and, therefore,

Hooda's claim for conversion is barred. [*See* R. 16-1 at 10.] The Sixth Circuit has stated that in a

conversion claim in Kentucky, "[a] cause of action will not accrue under the discovery rule until

the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only

that he has been injured but also that his injury may have been caused by the defendant's

conduct." *Madison Capital Co., LLC v. S & S Salvage, LLC*, 507 F. App'x 528, 535 (6th Cir.

2012) (quoting *Louisville Trust Co. v. Johns—Manville Prods. Corp.*, 580 S.W.2d 497, 501 (Ky.

1979)). Here, the Sanjay Defendants fail to argue when Hooda should have discovered that the

alleged conversion occurred. Therefore, the defendants have failed to convince the Court that

"the complaint still fails to allege a plausible theory of relief." *Garceau*, 572 F. App'x at 371.

The Court is also unconvinced by the Plaintiffs' argument that the conversion is a "continuing

---

[11] This is dissimilar to the plaintiff in *Ceres Protein*, who alleged that the defendants contacted a potential client and accused the plaintiff of patent infringement. *See Ceres Protein*, 2016 WL 6090966, at *2.

[12] Ajay mistakenly cites the statute of limitations for stolen property. [R. 11-1 at 7.] In Kentucky, a claim of conversion has a two-year statute of limitations. *See Madison Capital Co., LLC v. S & S Salvage, LLC*, 507 F. App'x 528, 533 (6th Cir. 2012) ("The relevant Kentucky statute thus provides in plain language that claims of conversion must now be initiated within two years of the accrual of the cause of action.").

violation,"[13] however, presuming all of the factual allegations in the complaint are true and drawing all reasonable inferences in favor of the non-moving party, the Court will allow the claim to survive dismissal.[14]

## CONCLUSION

In the end, this is a Rule 12(b)(6) motion. The Court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. Essentially applying that standard at this stage of the proceedings, the Court has denied the defendants motions. Discovery in the matter will shed more light as to the accuracy of the allegations.

For the foregoing reasons, **IT IS HEREBY ORDERED:** The Ajay LLC Defendants' Motion to Dismiss for Failure to State a Claim, [R. 15.], is **DENIED**. The Sanjay Defendants' Partial Motion to Dismiss for Failure to State a Claim, [R. 16.], is **DENIED**.

**IT IS SO ORDERED.**

cc: Counsel of Record

---

[13] The continuing violation doctrine is a narrow exception to the statute of limitations rule, and courts are hesitant to apply it outside the Title VII context. *Phat's Bar & Grill, Inc. v. Louisville-Jefferson Cty. Metro Gov't*, No. 3:10-CV-00491-H, 2013 WL 124063, at *3 (W.D. Ky. 2013) (citing *Sharpe v. Cureton*, 319 F.3d 259, 288 (6th Cir. 2003)). Furthermore, "the acts constituting the continuing violation cannot be discrete acts or merely 'continual ill effects from an original violation.'" *Id.* at *4 (quoting *Eidson v. Tennessee Dept. of Children's Services*, 510 F.3d 631, 635 (6th Cir. 2007). Here, Hooda appears to be experiencing "continual ill effects" from the original violation of the Taxaks taking his immigration documentation. Therefore, even if the Court were to ignore precedent, the continuing violation doctrine still might not apply to this situation.

[14] The Court acknowledges the Plaintiffs' timely reply in filing the First Amended Complaint. However, the Court finds it unnecessary to analyze whether Ajay's subsequent motion should be denied for being untimely because the Court is denying the motion as it pertains to *all* of the Ajay Defendants.